**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Eileen Baird,<br><br>Plaintiff,<br><br>v.<br><br>Informa Connect USA LLC,<br><br>Defendant. | Civil No. 3:25-cv-01939 (VDO)<br><br>August 17, 2026 |

**RULING AND ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [ECF No. 26]**

The defendant, Informa Connect USA LLC ("Informa"), has moved the Court for an order compelling the plaintiff, Eileen Baird ("Baird"), to submit her claims under the federal Age Discrimination in Employment Act and Connecticut Fair Employment Practices Act to arbitration, and for an order staying the case during the pendency of arbitration proceedings. (Mot. to Compel Arbitration & Stay Proceedings, ECF No. 26) (hereinafter "Motion"). The presiding District Judge, the Honorable Vernon D. Oliver, referred the Motion to the undersigned Magistrate Judge for resolution. (Order of Referral, ECF No. 34.) For the reasons set forth below, Informa's motion will be granted, Baird will be ordered to arbitrate her claims, and this case will be stayed while she does so.

## I. Background

Baird began working at Informa in June 2018 after Informa's acquisition of her then-employer, UBM Media. (Am. Compl., ECF No. 15, ¶¶ 21, 24.) After she joined Informa, she became a "Group Business Director, North America, Medical Aesthetics and Anti-Aging." (*Id.* at ¶ 22.) In 2019, Informa launched an arbitration program. (Decl. of Miranda LaHaie, Ex. 1 to

Motion, ECF No. 26, ¶ 4) (hereinafter "LaHaie Decl."). On October 30, 2019, Informa circulated a "Benefits and HR policies update" to employees at their company email addresses, including a notification of Informa's new arbitration program. (LaHaie Decl. ¶ 4; Ex. A to LaHaie Decl. at 1-2.) The email included a link for employees to review and acknowledge the Mutual Arbitration Agreement, as well as their 2020 Benefits selection. (*Id.*) The link took employees to a copy of the Mutual Arbitration Agreement and acknowledgement form, hosted on the Microsoft Forms application. (LaHaie Decl. ¶ 4; Ex. B to LaHaie Decl. at 2.) The form included a checkbox, which the employee would check to "acknowledge that [the employee] reviewed and agree[d] to Informa's Arbitration Agreement." (Ex. B to LaHaie Decl. at 2.) Once the employee checked and submitted notification of their acknowledgement and agreement, Microsoft Forms would generate "a record of the time and date of completion." (LaHaie Decl. ¶ 4.) Records from Informa's Human Resources department showed that the Baird acknowledged reviewing and agreeing to the Mutual Arbitration Agreement on November 22, 2019 and November 25, 2019. (LaHaie Decl. ¶ 5-6; Ex. C to LaHaie Decl.)[1]

[1] Baird objects to Informa's use of Exhibit C, arguing that it is a "printout based upon unreliable double or triple hearsay that lacks the foundation for admissibility." (Pl.'s Obj. to Mot. to Compel Arbitration & Stay Proceedings, ECF No. 29) (hereinafter "Objection"). This argument is unpersuasive. "Motions to compel arbitration necessarily consider evidence outside the pleadings, and like summary judgment motions, are an exception to the hearsay bar, when, like here, the evidence consists of testimony based on personal knowledge, which would otherwise be admissible at trial." *Wurts v. Wells Fargo Bank, N.A.*, No. 25-cv-5605 (SJB)(ARL), 2026 WL 2049801, at *3 n.1 (E.D.N.Y. July 16, 2026); *see also Worthington v. JetSmarter, Inc.*, No. 18 CIV. 12113 (KPF), 2019 WL 4933635, at *5 (S.D.N.Y. Oct. 7, 2019) (noting that "courts routinely rely on affidavits and declarations" and "screenshots . . . submitted by the company's employee[s]" when considering motions to compel arbitration). LaHaie's declaration establishes that, as the VP of Human Resources for Informa, she has personal knowledge "regarding the processing and management of employment agreements," and the ability to "obtain a record of the submission" of agreements "and explain the meaning of the events that appear on them." (LaHaie Decl. ¶¶ 2, 5.)

In September 2024, Informa informed Baird that it was terminating her employment. (Am. Compl., ECF No. 15, ¶ 36.) Her last day of work was October 4, 2024. (*Id.*) At the time of her discharge, Baird was sixty-four years old. (*Id.* at ¶ 4.) She then retained counsel, who sent a letter of representation to Informa in October 2024. (Aff. of Eileen Baird, ECF No. 29-1, ¶ 7) (hereinafter "Baird Aff.") There was no early resolution of the matter. (*Id.* at ¶ 8.) On February 14, 2025, Baird filed a charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"). (Am. Compl., ECF No. 15, ¶ 14.) The EEOC released jurisdiction on July 18, 2025. (*Id.* at ¶ 15; Ex. 1 to Am. Compl.) Although Baird was required to file a lawsuit within ninety days of her receipt of the EEOC's official notice, the parties executed two tolling agreements which extended the applicable statute of limitations. (Am. Compl., ECF No. 15, at ¶¶ 16-17.)

On November 20, 2025, Baird filed a complaint in this Court, bringing claims pursuant to the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§ 621, *et seq.*) and the Connecticut Fair Employment Practices Act ("CFEPA," Conn. Gen. Stat. §§ 46a-60, *et seq.*). (Compl., ECF No. 1.) After the complaint was filed, counsel for Informa informed Baird that she had named two unnecessary parties as defendants. (Mem. of L. in Supp. of Mot. for Leave to Amend Pl.'s Compl., ECF No. 13, at 2.) Baird then moved, with Informa's consent, to amend the complaint to drop the unnecessary parties and limit the action to one corporate entity defendant. (*Id.* at 1.) The motion was granted and Baird filed her amended complaint on February 2, 2026. (Am. Compl., ECF No. 15.) Pursuant to Fed. R. Civ. P. 15(a)(3), Informa had until February 17, 2026 to respond to the Amended Complaint. Informa filed a consent motion to extend its deadline

to "answer, move against, or otherwise respond to the Amended Complaint" by ten days, which was granted. (ECF Nos. 23, 24.)

On February 27, 2026, Informa filed its motion to compel arbitration and stay proceedings. (ECF No. 26.) Baird objected to the motion (ECF No. 29), Informa replied to the objection (ECF No. 32), and Baird filed a sur-reply (ECF No. 33). Judge Oliver then referred the motion to the undersigned for resolution. (Order of Referral, ECF No. 34.) Neither party having requested oral argument, the motion is now ripe for decision.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "When determining whether to compel arbitration pursuant to the FAA, a court looks to four factors: (1) whether the parties agreed to arbitrate their dispute; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) whether Congress intended the federal statutory claims asserted by the plaintiff, if any, to be non-arbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the remaining claims pending arbitration." *Billie v. Coverall N. Am., Inc.*, 444 F. Supp. 3d 332, 343 (D. Conn. 2020) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

Baird does not contest three of these four factors. She does not argue that her dispute, if arbitrable, is outside the scope of the arbitration agreement. (*See generally* Objection.) She does not contend that claims under the ADEA are non-arbitrable (*see id.*), nor could she. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991). She also has not disputed that the lawsuit should be stayed pending resolution of the arbitration, if her claims are indeed subject to arbitration. (*See generally* Objection.)

Instead, Baird raises only two objections. First, she asserts that Informa waived its right to arbitration. (*Id.* at 4-6.) Second, she argues that Informa has not carried its burden to prove that the parties had an arbitration agreement. (*Id.* at 6-10.) For the reasons set forth below, the Court concludes that Informa has not waived its right to arbitration, and that Informa has established the existence of a valid arbitration agreement. Since the latter issue would seem to precede the former analytically, the Court will address it first.

**A. Informa Has Shown the Existence of a Valid Arbitration Agreement**

"The threshold question facing any court considering a motion to compel arbitration" is "whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). That question "is determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002)); *see also First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295-96 (2d Cir. 1999) ("[W]hile § 2 of the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also 'preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.'") (quoting *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993)).

Under Connecticut law, a contract is formed through an offer and an acceptance of that offer. *See Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.*, 159 Conn. 242, 246 (1970) ("It is elementary that to create a contract there must be an unequivocal acceptance of an offer."); *Ubysz*

*v. DiPietr*o, 185 Conn. 47, 51 (1981) ("[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; . . . and the identities of the contracting parties must be reasonably certain." (internal citations omitted)). The party seeking enforcement of an arbitration agreement bears the initial burden of proving the existence of a contractually valid agreement. *E.g. Bridgeport Pipe Eng'g Co.*, 159 Conn. at 246 ("[T]he burden rest[s] on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract.").

Informa has moved to compel arbitration on the grounds that the parties formed a binding agreement to arbitrate when Baird received the Mutual Arbitration Agreement and agreed to its provisions through the Microsoft Forms application. (Motion at 6-7.) Baird does not expressly deny having agreed to arbitrate (*see* Baird Aff., ¶ 4) (stating only that she has "no recollection" of having done so), but she asserts that the Informa has failed to meet its evidentiary burden to show the existence of an agreement. (Objection at 7.) She says that Informa was required to, but did not, come forward with eight specific pieces of information if it wished to prove an agreement. (*Id.* at 8-9.) She further argues that this Court should draw a "reasonable inference" that she "never looked at the [electronically-communicated] materials" and "their significance to her employment rights was not clear and conspicuous." (*Id.* at 10.) For the reasons set forth below, these arguments are unpersuasive.

First, Baird's claim that LaHaie Declaration and its attachments are insufficient to prove the existence of an arbitration agreement is contrary to well-reasoned Connecticut authority. As Informa points out in its reply brief (ECF No. 32), this case is analogous to *Bushey v. Home Direct Logistics, LLC*, No. UWY-CV-21-6061586 S, 2022 WL 2298419 (Conn. Super. Ct. June 24, 2022), where the defendant successfully moved to compel arbitration in a lawsuit brought by a

former employee. The defendant was "unable to locate a signed copy" of the Arbitration Agreement, instead submitting a copy of the unsigned Arbitration Agreement, along with a declaration attesting to the process by which employees were required to sign and accept the terms of the agreement. *Id.* at *1. The court concluded that the declaration was sufficient to support the request to compel arbitration, as the "declaration reflect[ed] that each of the defendant's employees is presented with a full text of the Mutual Agreement to Individually Arbitrate Disputes and further, that based on his review of relevant registration records, the plaintiff agreed to and accepted electronically the terms and conditions of the Mutual Agreement to Individually Arbitrate Disputes." *Id.* at *8.

In this case, LaHaie has likewise declared under penalty of perjury that all employees – including Baird – were asked to electronically acknowledge their review of and agreement to the Mutual Arbitration Agreement. (LaHaie Decl. ¶ 4.) Attached as an exhibit to the declaration was a copy of the communication that was sent to employees in October 2019, which included a link to the Microsoft Form with the Mutual Arbitration Agreement. (Ex. A to LaHaie Decl.) The Microsoft Form provided the full text of the Mutual Arbitration Agreement, and below the text was a check box which employees were directed to check to acknowledge that they reviewed and agreed to the terms of the agreement. (Ex. B to LaHaie Decl.) Also attached as an exhibit to the declaration was a record of Baird's electronic submission from November 2019, showing that Baird electronically agreed to and accepted the terms of the agreement. (LaHaie Decl. ¶¶ 5-6, Ex. C to LaHaie Decl.) This is sufficient evidence to support Informa's request to compel arbitration. Informa need not "show initially that the agreement would be *enforceable*, merely that one existed," *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (emphasis in original), and courts routinely find that an agreement exists when the employee

"click[ed] an 'I agree' box after being presented with a list of terms and conditions of use . . . . for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). Therefore, the Court concludes that the parties formed a valid arbitration agreement.

Because Informa has cleared the bar of showing the existence of an arbitration agreement, the burden shifted to Baird to "counter with at least some evidence to substantiate her denial that an agreement had been made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (emphasis and quotation marks omitted) (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)). As noted above, Baird does not expressly deny entering into an arbitration agreement; rather, she says only that she has "no recollection" of doing so. (Baird Aff., ¶ 4.) But she does ask the Court to draw a "reasonable inference" that she "never looked at the materials," and that "their significance to her employment rights was not clear and conspicuous." (Objection at 10.) She asserts that the Excel spreadsheet provided by Informa, which shows that she accessed the Arbitration Agreement "for 4 seconds on one occasion and for 5 seconds three days later," supports an inference that she never looked at the materials. (*Id.*; *see also* Ex. C to LaHaie Decl.) But even if this were true, it does not render the arbitration agreement unenforceable. "Under Connecticut law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he or she is therefore bound by its terms and conditions." *Paltz v. All. Healthcare Servs., Inc.*, No. 3:21-cv-0020 (VAB), 2022 WL 633732, at *5 (D. Conn. Mar. 4, 2022) (citing *Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App. 650, 654 (1998)). "[I]t is the party's responsibility to delay the signing of an agreement that is not understood," and failure to read a contract "does not warrant avoidance, modification, or nullification of its provisions." *Friezo v. Friezo*, 281 Conn. 166, 199 (2007) (citations and

quotation marks omitted), *overruled on other grounds by Bedrick v. Bedrick,* 300 Conn. 691, 698 (2011).

Baird also stated in her affidavit that she has "no recollection of ever having seen an arbitration agreement, reviewing an arbitration agreement, or having agreed to submit [her] claims to arbitration." (Baird Aff., ¶ 4.) Although it is entirely plausible that Baird does not specifically remember signing a single arbitration agreement over five years ago, this does not support her conclusion that no agreement exists. A person does not have to remember the exact moment she signs a contract for that contract to be enforceable. "Where a party merely states that she cannot *recall* signing an agreement (as opposed to *denying* she has done so), such a declaration ordinarily fails to create a triable issue of fact." *Barrows*, 36 F.4th at 51 (emphasis in original). In sum, Baird has not denied signing an arbitration agreement, and had she done so, she would not have sufficiently substantiated that denial. The Court therefore finds that a valid arbitration agreement has been formed.

**B. Informa Has Not Waived Its Right to Arbitration**

Baird also asserts that Informa has waived its right to arbitration, for several different reasons. She says that Informa: (1) "waited seventeen months before moving to compel arbitration"; (2) filed a motion to dismiss and sought a no-probable cause finding in the EEOC; (3) agreed to a tolling agreement that was "necessary to preserve the plaintiff's right to her claims in court"; (4) "strategically wait[ed]" until she filed her federal complaint "in order to test the issue of whether Plaintiff met the statute of limitations deadline"; (5) negotiated a resolution of a motion to dismiss the claims against two defendants named in the original complaint; and (6) filed a motion for an extension of time to respond to the complaint, without mentioning that it wanted to arbitrate. (Objection at 3-4, 6.) Informa disagrees, asserting that its actions were not inconsistent

with a desire to arbitrate. (Def.'s Reply to Pl.'s Obj., ECF No. 32, at 1-5.) The Court agrees with Informa.

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). For a party to waive its right to arbitrate, it must "knowingly relinquish the right to arbitrate by acting inconsistently with that right[.]" *Doyle v. UBS Fin. Servs.*, Inc., 144 F.4th 122, 130 (2d Cir. 2025) (quoting *Morgan*, 596 U.S. at 419). "[O]rdinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator." *Meyer,* 868 F.3d at 80. But "[w]hen the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver." *Id.* at 80-81; *see also Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 614 (S.D.N.Y. 2020) ("[C]ourts may properly adjudicate waiver-based objections to arbitration when the type of waiver alleged is that the party seeking arbitration has participated in litigation on the dispute.").

A party waives its right to arbitrate when it "seek[s] full and final resolution of the claims against them in federal court," since seeking that final resolution is "inconsistent with the right to arbitrate those same claims." *Doyle*, 144 F.4th at 132. "[A] party with a claim to arbitration faces a binary choice: litigation or arbitration." *Id.* at 131. To determine whether the moving party has waived its right to arbitrate, "[courts] may consider all aspects of the moving party's conduct[.]" *Doyle*, 144 F.4th at 130. As Baird correctly notes, "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." (Pl.'s Sur-Reply Br. in Resp. to Def.'s Reply to Pl.'s Obj., ECF No. 33, at 2) (citing *Morgan,* 596 U.S. at 411). But the court's evaluation of the moving party's conduct may include "those factors that were significant under [the Second Circuit's] pre-*Morgan* test – as long as

[courts] do not do so through the lens of prejudice." *Doyle*, 144 F.4th at 130. These factors include "(1) the time elapsed from when litigation was commenced until the request for arbitration; [and] (2) the amount of litigation to date, including motion practice and discovery . . . ." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).

The Court concludes that none of the actions cited by Baird, viewed together or separately, show that Informa waived its right to arbitration. To begin with, Baird asserts that Informa waited seventeen months to move to compel arbitration, but most of that seventeen-month period was pre-litigation. Courts in this circuit often decline to consider an employer's pre-litigation conduct when addressing the question of waiver, reasoning that the effect of that conduct is an issue for the arbitrator to decide. *See, e.g., Baginsky v. Zynga, Inc.*, No. 25-cv-1992 (ALC), 2026 WL 810330, at *5 (S.D.N.Y. Mar. 24, 2026) (declining to rule on the issue of waiver because the plaintiff's waiver argument was based on pre-litigation conduct); *Herman v. Katten Muchin Rosenman LLP*, No. 25-cv-3162 (JHR) (RWL), 2025 WL 2462725, at *2 (S.D.N.Y. Aug. 27, 2025) (same). When courts do consider the employer's pre-litigation conduct, they often hold that it does not support a finding of waiver unless the employer refused to arbitrate pre-suit and then changed its tune once a lawsuit was filed. *E.g., Manalis v. Primis Bank*, No. 25-cv-3066 (OEM) (TAM), 2026 WL 2139021, at *22 (E.D.N.Y. July 24, 2026). In this case, Baird does not claim that she ever raised a valid demand of arbitration that Informa refused to submit to. Nor does she cite any authority for the proposition that normal pre-litigation activities in an employment dispute can support a finding of waiver. (*See generally* Objection at 6-10.)

In particular, Informa's participation in the EEOC proceedings do not support Baird's waiver claim. The EEOC is not bound by private arbitration agreements. *E.E.O.C. v. Waffle*

*House, Inc.*, 534 U.S. 279, 294 (2002). Because of this, courts in this circuit have generally concluded that parties do not waive their right to arbitration by participating in EEOC/CHRO proceedings, or in the EEOC's own arbitration process. *See, e.g.*, *Ferguson v. United Health Care*, No. 3:08-cv-1389 (MRK), 2008 WL 5246145, at *4 (D. Conn. Dec. 17, 2008) ("Since [defendant] could not have halted the CHRO proceedings once the agency decided to look into [plaintiff's] complaint, it cannot be that [defendant] waived its rights under the Arbitration Policy for failing to try to do so."); *Santos v. GE Cap.*, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) ("The Court also does not find that [defendant's] participation in the EEOC arbitration constitutes a waiver of its desire to arbitrate."). The Court declines to infer waiver from a failure to raise the private right to arbitrate before the EEOC, as "any effort to compel arbitration before the EEOC is straightforwardly unavailing," and "[a] party's decision to eschew 'a futile attempt to compel arbitration' before the EEOC therefore does not evince an intentional relinquishment of the right to arbitrate." *Brevard v. Credit Suisse*, No. 23-CV-428 (LJL), 2024 WL 36991, at *9 (S.D.N.Y. Jan. 3, 2024) (quoting *Brown v. Coca-Cola Enters., Inc.*, 2009 WL 1146441, at *12 (E.D.N.Y. Apr. 28, 2009)).

Informa also did not waive its right to arbitrate by signing a tolling agreement, as Baird contends. Baird may have been contemplating a federal lawsuit when she signed the agreement, but that does not mean that Informa was. Indeed, the tolling agreement expressly refers to arbitration. (*See* Ex. 5 to Objection, ECF No. 29-5, at 2) ("During the Tolling Period, Ms. Baird shall refrain from commencing any lawsuit, action, charge, complaint, and/or other proceeding in federal or state court, *arbitration*, or any administrative agency, no statute of limitations or period of limitations shall run against Baird during the Tolling Period[.]" (emphasis added)). The tolling agreement also contains a non-waiver clause that cuts against any argument that Informa was

waiving its right to arbitrate. (*See id.*) ("This Amended Tolling Agreement is entered into by the Parties without prejudice to and without waiver of any Party's positions, rights, contentions, arguments, defenses, and/or remedies with respect to the Claims, except as stated in this Amended Tolling Agreement.").

Informa's actions in the three-month period following the initiation of this lawsuit are also not inconsistent with the right to arbitrate. The "negotiations" that Baird refers to were out-of-court discussions related to Baird's naming of unnecessary parties in the original complaint, and they did not result in a formal motion to dismiss under Rule 12. Courts generally look to substantive rather than procedural participation when considering the issue of waiver. "This includes, for example, moving to dismiss on the merits, seeking dispositive relief, or pursuing resolution of arbitrable issues in federal court, before invoking arbitration. . . . Participation in limited or ministerial proceedings that do not address the substance of the arbitrable dispute does not constitute waiver." *State Farm Mut. Auto. Ins. Co. v. Emuna Inc.*, 823 F. Supp. 3d 242, 248 (E.D.N.Y. 2026).

Baird also takes issue with the fact that Informa filed a motion for extension of time without mentioning its intent to file a motion to compel arbitration. Although in some cases, a party's failure to mention its intent to arbitrate to the court may be inconsistent with the right to arbitrate, those cases are distinguishable from the situation here. In *Doyle*, the Second Circuit concluded that the moving party's conduct was inconsistent with the right to arbitrate – noting, among other things, that the moving party filed a stipulated motion for extension of time without mentioning that it intended to move to compel arbitration. 144 F.4th at 131. But that motion came *after* the moving party had made a substantive motion to dismiss, and after the District Court ruled on it. *Id.* at 130-31. Here, Informa filed a consent motion for a ten-day extension of time, without any

history of substantive participation in the litigation. Baird has supplied no authority for the proposition that this conduct constituted a waiver of arbitration.

Finally, to the extent that Baird contends that the mere lapse of three months between the complaint and the motion to compel arbitration is sufficient to establish waiver, that contention is as unpersuasive as the others. While there is no hard-and fast rule, "[c]ourts have found delays longer than a year – and certainly longer than five months – not to constitute waiver." *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 (S.D.N.Y. 2021). Because Baird has not persuasively supported her claim of waiver, Informa's motion to compel arbitration will be granted, and the Court will impose a stay in the case until the conclusion of the arbitration proceeding. *See Nicosia*, 834 F.3d at 229 ("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).

## III. CONCLUSION

The Court has carefully considered all the arguments of the parties, even if not expressly referenced in this Ruling and Order. For the foregoing reasons, the Motion of the defendant, Informa Connect USA LLC, is granted. The plaintiff, Eileen Baird, is ordered to arbitrate her claims relating to the termination of her employment with Informa, in accordance with the terms of the Mutual Arbitration Agreement. The case is ordered stayed. Within thirty days after the arbitrator renders his or her final award, the parties shall file either (a) a stipulation of dismissal under Rule 41(a)(1)(A)(ii), if no further proceedings in this court are contemplated, or (b) if further proceedings are contemplated, a joint status report briefly identifying them in a non-argumentative manner.

This is not a recommended ruling subject to *de novo* review by the District Judge under 28 U.S.C. § 636(b)(1)(B). Rather, it is a final "determin[ation]" of a "pretrial matter" referred by the District Judge to a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). Accordingly, if review is sought by the District Judge, that review will be conducted under the "clearly erroneous or contrary to law" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); *see also Diaz v. Wanrong Trading Corp.*, 810 F. Supp. 3d 379, 383 n.2 (E.D.N.Y. 2025) ("A motion to compel arbitration is non-dispositive, and reviewable on appeal to the District Court for clear error."); *Chung v. Royal Care, Inc.*, No. 23-cv-7962 (OEM) (LKE), 2025 WL 809900, at *2 (E.D.N.Y. Mar. 14, 2025) ("Numerous courts in this Circuit have concluded that a motion to compel arbitration is non-dispositive and thus an R&R on that motion should be reviewed for clear error."); *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) ("District Courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)"); *accord PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) (explaining that "[a] federal court's ruling on a motion to stay litigation pending arbitration is not dispositive of either the case or any claim or defense within it[,]" but rather is "merely suspensory"). If Baird nevertheless wishes to seek review of this order, her written objection must be filed with the Clerk of the Court by August 31, 2026. *See* D. Conn. L. Civ. R. 72.2(a).

So ordered this 17th day of August, 2026, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge